**USG CORPORATION, a Delaware corporation, and Morris M. Cottle, individually and in a derivative capacity, Plaintiffs,**

v.

**WAGNER & BROWN, et al., Defendants.**

**Nos. 87 C 9399, 87 C 9455.**

United States District Court, N.D. Illinois, E.D.

Nov. 13, 1987.

Stephen C. Neal, P.C., Kevin T. Van Wart, Kirkland & Ellis, Chicago, Ill., for plaintiffs.

Frederic F. Brace, Jr., Ellen A. Rubel, Chicago, Ill., Stephen C. Neal, Emily Nicklin, Kevin T. Van Wart, Kirkland & Ellis, for Morris M. Cottle.

Don H. Reuben, John R. McCambridge, Isham, Lincoln & Beale, Chicago, Ill., Robert S. Rifkind, Douglas D. Broadwater, pro hac vice, Cravath, Swaine & Moore, New York City, for defendants.

### MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

On October 29, 1987 USG Corporation ("USG") filed a complaint in this court against defendants Wagner & Brown; Cyril Wagner, Jr.; Jack E. Brown; CY–57, Inc.; JACK–57, Inc.; Silverado Investments, Inc.; Soffit Corporation; and Desert Partners, L.P. USG seeks preliminary and injunctive relief against defendants for allegedly unlawful conduct in connection with their accumulation of USG stock. (Case No. 87 C 9399). On November 2, 1987 Morris M. Cottle, a shareholder of USG, filed a similar action against defendants in Judge Plunkett's court. (Case No. 87 C 9455). This court consolidated the two actions on November 4, 1987.

All of the defendants except Silverado Investments, Inc. and Soffit Corporation have moved this court to dismiss both complaints under Fed.R.Civ.P. 12(b). For the following reasons, the motion to dismiss is DENIED.

## BACKGROUND

Plaintiff USG Corporation is a publicly held Delaware corporation with its executive offices and principal place of business in Chicago, Illinois. USG is a diversified manufacturer of building products. Plaintiff Morris M. Cottle is a shareholder of USG and a citizen of Illinois. He brings this derivative action on behalf of himself and all other current USG shareholders, seeking injunctive relief against defendants for their allegedly unlawful accumulation of USG stock.

Defendant Desert Partners, L.P. ("Desert Partners") is a Texas limited partnership. CY–57, Inc. and JACK–57, Inc. are general partners of Desert Partners owning a 38.89% interest. Silverado Investments, Inc. and Soffit Corporation are limited partners of Desert Partners owning an 11.11% interest. Cyril Wagner, Jr. and Jack E. Brown are sole shareholders of CY–57, Inc. and JACK–57, Inc., respectively.

By September 23, 1987 Desert Partners had acquired more than five percent of the common stock of USG. Desert Partners currently holds 5,079,800 shares, which is approximately 9.93% of the outstanding shares.

During the month of October, 1987 Desert Partners filed three schedules with the Securities and Exchange Commission, as required by Section 13(d) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78m(d). The first Schedule 13D, filed on October 5, 1987, contained Desert Partners' first disclosure concerning its acquisition of more than five percent of USG stock.

In the Second 13D, filed on October 27, 1987, Desert Partners disclosed its desire to acquire control of USG. In this schedule, Desert Partners stated that it had engaged Prudential–Bache Securities, Inc. as a financial advisor to evaluate the feasibility of acquiring a controlling equity interest in USG. Desert Partners further disclosed that it was investigating possible financing for the potential transaction.

On October 29, 1987 Desert Partners filed a third Schedule 13D which disclosed that representatives of Desert Partners had met with representatives of USG to negotiate a transaction. Desert Partners stated that it would provide USG shareholders with value in excess of $50 per share.

On November 2, 1987 Desert Partners filed a fourth amended Schedule 13D, in which it disclosed that USG had filed the present complaint and to which it appended the complaint as an exhibit. The fourth Schedule 13D also disclosed that the Federal Trade Commission had initiated an investigation to determine whether Desert Partners had complied with the requirements of the Hart–Scott–Rodino Antitrust Improvements Act ("the H–S–R Act"), and that Desert Partners intended to cooperate with the investigation. Finally, Desert Partners disclosed that USG's management seemed to be unwilling to negotiate a transaction, and therefore Desert Partners was considering a tender offer to be made directly to USG shareholders.

## DISCUSSION

Defendants have moved to dismiss the complaints pursuant to Fed.R.Civ.P. 12(b)(6). However, defendants have based their motion to dismiss on the grounds of mootness. Thus, defendants are essentially attacking this court's subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). See Sanchez v. Edgar, 710 F.2d 1292, 1295 n. 2 (7th Cir.1983). Although a court must decide a motion to dismiss under Rule 12(b)(6) on the basis of the pleadings alone, a court may consider matters outside the pleadings when deciding a motion to dismiss for lack of jurisdiction. Id. Consequently, in deciding defendants' motion, this court has considered the pleadings as well as the accompanying exhibits.

Plaintiffs claim that the schedules which Desert Partners filed with the SEC did not comply with Section 13(d). Section 13(d) of the Securities and Exchange Act of 1934 requires any person who is directly or indirectly the beneficial owner of more than 5 percent of the stock of a corporation to file a statement containing information regarding (1) the background and identity of the

acquiring persons; (2) the source and amount of the funds used in making the purchases; (3) if the purpose of the purchases is to acquire control of the issuer, any plans to make any major change in its business or corporate structure; (4) the number of shares of the security which the acquiring person beneficially owns; and (5) whether the acquiring person has any contracts, agreements, or obligations regarding the issuer's stock. 15 U.S.C.A. § 78m(d)(1)(A)-(D). In addition, Section 13(d) requires the reporting person to amend its report if any material change occurs in the facts set forth in the statements. 15 U.S.C. § 78m(d)(2).

Plaintiffs assert that defendants failed to disclose certain material facts in the schedules it filed under Section 13(d).[1] The defendants argue that this case is moot because their fourth Schedule 13D provided any disclosure which plaintiffs claim was missing from the first three schedules. In order to determine whether this case is moot, this court must

> examine the claims that the plaintiffs make and the relief that they seek in order to resolve whether the parties will be 'affected by any view [a] [c]ourt might express on the merits of this controversy.'

*City of Milwaukee v. Block,* 823 F.2d 1158, 1163 (7th Cir.1987), quoting *DeFunis v. Odegaard,* 416 U.S. 312, 317, 94 S.Ct. 1704, 1706, 40 L.Ed.2d 164 (1974).

Although Section 13(d) is essentially a disclosure statute, an issuing corporation's remedies for a Section 13(d) violation are not limited to curative disclosure. The purpose of the reporting requirement in Section 13(d) is to insure that public shareholders facing a tender offer or the acquisition by a third party of a controlling block of shares may obtain adequate information about the qualifications and intentions of the acquiring person. *Indiana National Corp. v. Rich,* 712 F.2d 1180, 1183 (7th Cir.1983). Thus, the ultimate purpose of Section 13(d) is to protect shareholders. *Id.* at 1184. Filing a completely truthful Schedule 13D does not necessarily remedy the injuries suffered by shareholders who relied on the misstatements or omissions in the original Schedule 13D. As Judge Shadur recently noted in his well-reasoned opinion in *Champion Parts Rebuilders, Inc. v. Cormier Corp.,* 650 F.Supp. 87 (N.D.Ill.1986), former shareholders who have already sold their share may have an adequate remedy at law, but existing shareholders may require "forward-looking relief because the corporation's welfare (and therefore theirs) may have been adversely affected by the tainted acquisition of control or blocking control." [2]

This court cannot dismiss the complaints on the ground that defendants eventually brought to the attention of the SEC and the shareholders in its fourth Schedule 13D the fact that plaintiffs disputed the truth and completeness of the previous three filings. The merits of this controversy may warrant further injunctive relief on behalf of USG and its shareholders.

---

1. Specifically, plaintiffs claim that Desert Partners failed to disclose:

   1. that their actions may have violated the H–S–R Act, and these violations could seriously impede the possible courses of action described in the first Schedule 13D;
   2. Desert Partners' true intentions regarding USG;
   3. the identity of the beneficial owners of Silverado Investments and Soffit Corporation, and the sources of the funds which these entities promised to contribute to Desert Partners for its investment in USG;
   4. that the parent company of Desert Partners' financial advisor was involved in litigation with a wholly-owned subsidiary of USG and therefore had a potential conflict of interest in representing Desert Partners; and

   5. that Desert Partners expressed to USG management that they desired to end up with a non-publicly held company after the acquisition; that they intended to provide existing management with attractive equity participation in USG; and that in the transaction they contemplated, participating shareholders might receive as much as 50% of their consideration in a form other than cash.

2. Defendants assert that because all of their purchases of USG stock were made *before* the date on which Desert Partners filed the first Schedule 13D, injunctive relief should not issue to deprive them of voting or ownership rights they obtained legally. This court cannot take defendants' assertion as true on the face of the motion. Rather, this fact is one which must be established through evidence.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the complaints is DENIED.